UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMTAX HOLDINGS 2001-VV, LLC, | * | CIVIL ACTION |
| AMTAX HOLDINGS 248, LLC, | * | NO. |
| AMTAX HOLDINGS 2001-UU, LLC, | * | |
| AMTAX HOLDINGS 249, LLC, | * | |
| AMTAX HOLDINGS 250, LLC, | * | |
| | * | SECTION "___" |
| Plaintiffs, | * | JUDGE |
| | * | |
| v. | * | |
| | * | MAG. DIV. (__) |
| | * | MAG. JUDGE |
| WARREN HOMES, LLC, | * | |
| VICTOR S. LORASO, JR. | * | |
| RENE C. CRESCIONIE, SR. | * | |
| CANARY HOMES, LLC, | * | |
| HNASKO HOLDING COMPANY, INC., | * | |
| ROBIN HOMES, LLC, | * | |
| SMITH SQUARE, LLC, | * | |
| V. RAY ROSE, | * | |
| SUMMIT APARTMENT MANAGEMENT | * | |
| COMPANY, INC., | * | |
| MICHAEL R. PERALTA, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DAMAGES, DECLARATORY
JUDGMENT, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Respectfully submitted,

STEVEN F. GRIFFITH, JR., T.A. (27232)
ERIN E. PELLETERI (30666)
MATTHEW C. JUNEAU (33210)
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR ALL PLAINTIFFS,
AMTAX HOLDINGS 2001-VV, LLC,
AMTAX HOLDINGS 248, LLC,
AMTAX HOLDINGS 2001-UU, LLC,
AMTAX HOLDINGS 249, LLC, AND
AMTAX HOLDINGS 250, LLC**

**Table of Contents**

Introductory Statement ....................................................................................  1

I.      Parties ..................................................................................................  4

II.     Jurisdiction and Venue .........................................................................  6

III.    Factual Background .............................................................................  7

        A.      Ames Gardens .......................................................................  7

        B.      Canary Homes .......................................................................  15

        C.      Hnasko Homes .......................................................................  18

        D.      Robin Homes ........................................................................  23

        E.      Smith Square ........................................................................  31

        F.      Subsequent Defaults ..............................................................  34

IV.     Breach of Partnership Agreements By The Rose Entities ....................  35

V.      Breach of Fiduciary Duty By The Rose Entities ...............................  37

VI.     Declaratory Relief Against The Defendants .......................................  39

VII.    Conversion By the Rose Entities, Summit, and Mr. Peralta ...............  39

VIII.   Tortious Interference with
        Contractual Relations Against Mr. Rose and Mr. Peralta ...................  40

IX.     Enforcement of Personal Guaranties Against Mr. Rose ......................  42

X.      Permanent Injunctive Relief
        Against the Defendants .........................................................................  43

XI.     Contemporaneous Filing of Motion for
        Injunctive Relief ..................................................................................  44

Prayer ....................................................................................................  44

NOW INTO COURT, through undersigned counsel, come Plaintiffs, AMTAX Holdings 2001-VV, LLC, AMTAX Holdings 248, LLC, AMTAX Holdings 2001-UU, LLC, AMTAX Holdings 249, LLC, and AMTAX Holdings 250, LLC (collectively referred to as the "AMTAX Entities"), which, in support of their Complaint for Damages, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief ("Complaint") aver as follows:

<u>INTRODUCTORY STATEMENT</u>

The Defendants are former partners and representatives of five limited partnerships known as Ames Gardens Estates Limited Partnership, Canary Homes, L.P., Hnasko Affordable Homes, ALPIC, Robin Homes, L.P. and Smith Square Development Limited Partnership (collectively, the "Partnerships") and the former management company of the Partnerships. Each one of the Partnerships was formed for the purpose of owning and operating affordable multi-family housing complexes located in Jefferson Parish and Tangipahoa Parish, Louisiana. The relevant parties are:

- The Rose Entities[1] – a Former General Partners of the Partnerships;

- V. Ray Rose – the Manager and Officer of the Rose Entities;

- V. Ray Rose – Guarantor of the obligations of the Rose Entities;

- Summit Apartment Management Company, Inc. – the Former Management Company of the limited partnerships;

- Michael Peralta, the President of Summit Apartment Management Company, Inc.;

- Rene C. Crescionie, Sr. – a General Partner of Ames Gardens;

- Victor S. Loraso, Jr. – a General Partner of Ames Gardens; and

---

[1] The Rose Entities are Robin Homes, L.L.C., Smith Square Development, L.L.C., Canary Homes, L.L.C., Warren Homes, L.L.C., and Hnasko Holding Company, Inc.

- The AMTAX Entities – the Investor Limited Partners of the Partnerships

As the Investor Limited Partners, the AMTAX Entities make significant capital contributions into the limited partnerships, and own 99.99% of the interests of those limited partnerships. As the General Partners, the Rose Entities make a nominal capital contribution and have a less than .01% ownership interest in the limited partnerships (typically .008%). The Rose Entities' primary role is to develop the projects and manage the affairs of the partnerships, which includes running the daily operations of the apartment complexes owned by the Partnerships, and, in exchange for these duties, they receive fees. Here, the Rose Entities delegated much of their management responsibilities to Summit.

The AMTAX Entities, in their role as Investor Limited Partner, have broad rights to access and audit the books and records of the Partnerships. The audits performed most recently revealed, among other things, that the Rose Entities and/or Summit have continued to commingle the funds of the Partnerships, and receive and make unauthorized advances to other entities controlled by Mr. Rose despite repeated communications from the representatives of the AMTAX Entities that such conduct violated the partnership agreements and needed to be corrected.

In response to these issues, and the other violations of the partnership agreements, the AMTAX Entities sent all of the General Partners, including the Rose Entities, Notices of Default outlining various violations of the applicable partnership agreements, including mismanagement of partnership funds, failure to pay the AMTAX Entities management fees, and commingling partnership funds, improper advances of partnership funds to affiliates of the Rose Entities.

The AMTAX Entities have the right under the partnerships agreements to remove all of the General Partners if violations of the partnerships agreements are not timely cured.  And, as their counsel acknowledged, they were not.  Accordingly, on November 18, 2014, the AMTAX Entities arrived at the offices of the Partnerships to effect the orderly transfer of records and management of the Partnerships to the new General Partner designated by the AMTAX Entities in accordance with the partnership agreements.  Summit refused to cooperate, despite receiving official terminations of the relevant management agreements.

Instead, Summit employees, at the direction of Mr. Peralta, packaged up and removed the books and records of the Partnerships from the partnership offices in violation of the law and the removal provisions of the partnership agreements.  Most critically, the employees of the former management company removed tenant files – which contain sensitive financial information regarding the tenants of these apartment complexes and which are critical for the limited partnerships to have on site.  In fact, the partnership agreements expressly provide that all of the books and records of the limited partnerships must be maintained at the principal office of the partnerships, and that the AMTAX Entities are permitted to inspect and copy those records.  At this point, it is unknown where these records are currently being kept.  The refusal of the Rose Entities and Summit to turn over these records not only violates the partnership agreements, it jeopardizes the continued operations of the limited partnerships, the housing of hundreds of tenants in these complexes, and the tax credits of the AMTAX Entities.

The AMTAX Entities seek injunctive relief requiring the Defendants to turn over the Partnerships' property, including tenant records, confidential information, bank accounts, monies, materials, supplies, equipment, and other items; a judicial declaration pursuant to Rule

57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 that the Rose Entities, Victor R. Loraso, Jr., and Rene C. Crescionie, Sr. were properly removed under the partnership agreements and recognizing the authority of the AMTAX Entities to designate new General Partners as the proper representative of the Partnerships; damages (both foreseeable and unforeseeable); attorneys' fees; costs; and all other relief to which they are entitled.

## I.     PARTIES

1.

The plaintiffs, the AMTAX Entities, are Ohio limited liability companies.  None of the members of the AMTAX Entities are citizens of Louisiana.

2.

Defendant, Warren Homes, LLC ("Warren Homes"), is a Louisiana limited company. All of Warren Homes, LLC's members are Louisiana citizens.  Warren Homes, LLC was the Fiscal Partner, which is a General Partner, of Ames Gardens Estates Limited Partnership ("Ames Gardens").

3.

Defendant, Victor Loraso, Jr., is a Louisiana citizen.  Mr. Loraso was the Managing General Partner of Ames Gardens.

4.

Defendant, Rene C. Crescionie, Sr., is a Louisiana citizen.  Mr. Crescionie was the Co-General Partner of Ames Gardens.

5.

Defendant, Canary Homes, LLC, is a Louisiana limited company.  All of Canary Homes, LLC's members are Louisiana citizens.  Canary Homes, LLC was the Fiscal Partner, which is a General Partner, of Canary Homes, L.P. ("Canary Homes").

6.

Defendant, Hnasko Holding Company, Inc., is a Louisiana corporation with its principal place of business in Louisiana.  Hnasko Holding Company, Inc. was the Managing General Partner of Hnasko Affordable Homes, ALPIC ("Hnasko Homes").

7.

Defendant, Robin Homes, LLC, is a Louisiana limited liability company.  All of Robin Homes, LLC's members are Louisiana citizens.   Robin Homes, LLC was the Fiscal Partner, which is a General Partner, of Robin Homes, LP ("Robin Homes").

8.

Defendant, Smith Square, LLC, is a Louisiana citizen.  The sole member of Smith Square, LLC is a Louisiana citizen.  Smith Square, LLC was the Fiscal Partner, which is a General Partner, of Smith Square Development Limited Partnership ("Smith Square").

9.

Defendant, V. Ray Rose, is a Louisiana citizen.  Mr. Rose is an officer or manager of the Rose Entities, the Former General Partners of the Partnerships.  Mr. Rose is also a guarantor of the obligations of the Rose Entities.

10.

Defendant, Summit Apartment Management Company, Inc. ("Summit") is a Louisiana corporation with its principal place of business in Louisiana. Summit was the Management Company for the Partnerships.

11.

At all times material hereto, defendant, Michael R. Peralta, is a Louisiana citizen. Mr. Peralta is the President of Summit, the Former Management Company for the Partnerships.

12.

As the Plaintiffs, the AMTAX Entities, are not citizens of the State of Louisiana, and the Defendants are citizens of the State of Louisiana, diversity of citizenship exists. 28 U.S.C. § 1332(a)(1).

## II.    JURISDICTION AND VENUE

13.

The AMTAX Entities seek a declaration of their rights and obligations under the relevant provisions of partnership agreements as they relate to the removal of the Defendants, the Rose Entities.

14.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

15.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

16.

Additionally, the partnership agreements from which this lawsuit arises stipulate that jurisdiction and venue is proper in this Court and shall not be contested by the partners.

### III.   FACTUAL BACKGROUND

17.

All of the partnerships at issue were formed for the acquisition, construction, development, repair, improvement, maintenance, operation, lease, and disposal of multi-family housing complexes, and are governed by similar partnership agreements.  Defendant, Summit, is the former management company for each of the partnerships.[2]

### A.   *Ames Gardens*

18.

Ames Gardens Estates Limited Partnership is governed by its Third Amended and Restated Articles of Partnership (the "Ames Gardens Partnership Agreement"), dated effective May 15, 2002.  Pursuant to the Ames Gardens Partnership Agreement, the partners were as follows:

- Warren Homes, LLC – Fiscal Partner and Owner of .007% of the partnership interests in Ames Gardens

---

[2] Due to the complexity created by the number of parties and partnerships involved, the AMTAX Entities have separated the factual background into subheadings for each partnership despite some repetition in the allegations due to certain commonalities between partnerships.

- Victor R. Loraso, Jr. – General Partner and Owner of .001%

- Rene C. Crescionie, Sr. – Co-General Partner and Owner of .001%

- PROTECH 2002-A, LLC – Special Limited Partner and Owner of .001%

- AMTAX Holdings 2001-VV, LLC – Investor Limited Partner and Owner of 99.99%

19.

As it relates to capital contributions of the partners, AMTAX Holdings 2001-VV, LLC contributed $2,324,767 to the Ames Garden Partnership.  Warren Homes LLC contributed $157.

20.

The Ames Gardens Partnership Agreement was entered into for the purpose of acquiring, constructing, developing, repairing, improving, maintaining, operating, leasing, disposing of and otherwise dealing with the "Project."  The "Project" is defined in the Ames Gardens Partnership Agreement as the "Land and Improvements," which are defined as certain parcels of land on which the Improvements known as Ames Gardens Estates are located.  The Ames Gardens Project is hereinafter referred to as such.

21.

AMTAX Holdings 2001-VV, LLC, in its capacity as Investor Limited Partner, contributed certain, enumerated capital to the Ames Gardens Project and is entitled to receive federal, affordable housing tax credits issued by the Louisiana Housing Finance Authority to Ames Gardens.

22.

Under the Ames Gardens Partnership Agreement, Warren Homes, LLC assumed certain duties.  In exchange, Warren Homes, LLC received a specified ownership interest in Ames Gardens and fees.

23.

The "Duties and Obligations of the General Partners" are set forth in Article VII, Section 7.4 of the Ames Gardens Partnership Agreement and are incorporated herein as though set forth *in extenso*.[3]  Additionally, Article VII, Section 7.1 of the Ames Gardens Partnership Agreement places certain restrictions on the authority of Warren Homes, LLC.

24.

Among those enumerated duties is Warren Homes, LLC's obligation to supervise the Management Agent.  On January 1, 2007, Warren Homes, LLC, acting on behalf of Ames Gardens, entered into a Management Agreement for Residential Property ("Ames Management Agreement"), which made Summit the Management Agent of Ames Garden.  The Ames Management Agreement obligates Summit to manage the property presently known as Ames Gardens Estates.  The Ames Management Agreement further provides that Summit may be terminated immediately by Ames Gardens if Warren Homes, LLC ceases to be the General Partner of Ames Gardens.

25.

Warren Homes, LLC and/or Summit, as its management agent, is obligated to maintain a complete and accurate set of books and supporting documentation related to Ames Gardens at

---

[3] The applicable partnership agreements are being filed into the record in connection with the Motion for Temporary Restraining Order.

the principal office of Ames Gardens.  Specifically, pursuant to Section 12.1(A)(i), Warren

Homes, LLC is obligated to keep or cause to be kept:

> A complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Partnership's business.  The books and records of the Partnership (including all records required to be maintain under the Act) shall at all times be maintained at the principal office of the Partnership. Each of the Partners and their duly authorized representatives shall have the right to examine the books of the Partnership and all other records and information concerning the operation of the Property at reasonable times.

26.

In addition, and pursuant to Section 12.1(K), AMTAX Holdings 2001-VV, LLC is

entitled to inspect and copy the records of Ames Gardens.

27.

The "Certain Rights of Investor Limited Partner" are set forth in Article IV of the Ames

Gardens Partnership Agreement.  Under Article IV, Section 4.5(A)(iv)(2) of the Ames Gardens

Partnership Agreement, AMTAX Holdings 2001-VV, LLC has the right:

> to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner, or upon the occurrence of any of the following:

> (2)      the General Partners, or any of them, shall have violated any rights, powers, duties, representations or warranties as set forth in Article VII herein or shall have violated any material provision of this Agreement, defaulted on a guarantee here or the timely payment of a Penalty Payment or violated any material provision of applicable law.

28.

Under Article VIII, Section 8.4(E) of the Ames Gardens Partnership Agreement, a General Partner is liable for, among other things, any loss or damage that the Partnership *or any of its partners* may incur as a result of its removal.

29.

Through audits of Ames Gardens, AMTAX Holdings 2001-VV, LLC discovered that Warren Homes, LLC violated the Ames Gardens Partnership Agreement by making unapproved loans and/or advances of Ames Gardens' funds.  Specifically, Warren Homes, LLC advanced $20,000 in Ames Gardens' funds to Canary Homes, L.P.; and $2,033 in Ames Gardens' funds to affiliates of Warren Homes, LLC.  These advances constitute violations of certain provisions of the Ames Gardens Partnership Agreement, including, but not limited to, Sections 7.1(B)(v) and 7.4(F).

30.

The audits also revealed that Warren Homes, LLC accepted an advance of funds in the amount of $20,000 from Robin Homes, L.P., which was in violation of the prohibition in Section 7.1(B)(i) of the Ames Gardens Partnership Agreement of General Partners incurring indebtedness for money borrowed on the general credit of Ames Gardens.

31.

Accordingly, on July 1, 2014, an authorized representative of AMTAX Holdings 2001-VV, LLC sent a Notice of Default (the "Ames Notice") to the General Partners of Ames Gardens citing Article IV, Section 4.5(A)(iv)(2).  The Ames Notice further advised that, pursuant to Section 13.12, AMTAX Holdings 2001-VV, LLC had the right to remove the General Partners

upon the expiration of thirty (30) days from the date of receipt of this notice, which is the period afforded to the partners for default of the Ames Gardens Partnership Agreement to be cured.

32.

Warren Homes, LLC, through its counsel, has admitted that it breached the Ames Gardens Partnership Agreement.  The General Partners of Ames Gardens received notice of their defaults, and did not cure those defaults within the requisite thirty-day period.  Due to these violations of the Ames Gardens Partnership Agreement, AMTAX Holdings 2001-VV, LLC has the right to remove Warren Homes, LLC, Mr. Loraso, and Mr. Crescionie as the General Partners.  Further, as a consequence of the removal of Warren Homes, LLC, Summit is terminated as the management agent.

33.

On November 18, 2014, an authorized representative of AMTAX Holdings 2001-VV, LLC arrived at the management office of Ames Gardens to access and take possession of all Ames Gardens' property, including the books, records, tax, financial, and accounts of Ames Gardens in the possession and/or under the control of the General Partners and Summit so that the new General Partner could take over the management of the Ames Gardens Project. However, Summit employees packaged and removed the Ames Gardens' records and denied AMTAX Holdings 2001-VV, LLC access to them.  Further, Mr. Peralta and/or Summit has refused to cede control of the Ames Gardens' bank accounts.

34.

Pursuant to the Ames Gardens Partnership Agreement, AMTAX Holdings 2001-VV, LLC has the right to require that Warren Homes, LLC and/or Summit afford it access to these books and records.

### B.      *Canary Homes*

35.

Canary Homes, L.P. is governed by its Second Amended and Restated Articles of Partnership (the "Canary Homes Partnership Agreement"), dated effective July 1, 2003. Pursuant to the Canary Homes Partnership Agreement, the partners were as follows:

- Canary Homes, LLC – General Partner and Owner of .008% of the partnership interest in Canary Homes

- People's Community Subsidiary, Inc. – General Partner and Owner of .001%

- PROTECH 2003-B, LLC – Special Limited Partner and Owner of .001%

- AMTAX Holdings 248, LLC – Investor Limited Partner and Owner of 99.99%

36.

As it relates to capital contributions of the partners, AMTAX Holdings 248, LLC contributed $920,409 to the Canary Homes Partnership.  Canary Homes, LLC contributed $92.

37.

The Canary Homes Partnership Agreement was entered into for the purpose of acquiring, constructing, developing, repairing, improving, maintaining, operating, leasing, disposing of and otherwise dealing with the "Project."  The "Project" is defined in the Canary Homes Partnership Agreement as the "Land and Improvements," which are defined as certain parcels of land on

which the Improvements known as Canary Homes are located.  The Canary Homes Project is hereinafter referred to as such.

38.

AMTAX Holdings 248, LLC, in its capacity as Investor Limited Partner, contributed certain, enumerated capital to the Canary Homes Project and is entitled to receive federal, affordable housing tax credits issued by the Louisiana Housing Finance Authority to Canary Homes.

39.

Under the Canary Homes Partnership Agreement, Canary Homes, LLC assumed certain duties.  In exchange, Canary Homes, LLC received a specified ownership interest in Canary Homes and fees.

40.

The "Duties and Obligations of the General Partners" are set forth in Article VII, Section 7.4 of the Canary Homes Partnership Agreement and are incorporated herein as though set forth *in extenso*.  Additionally, Article VII, Section 7.1 of the Canary Homes Partnership Agreement places certain restriction on the authority of Canary Homes, LLC.

41.

Among those enumerated duties is Canary Homes, LLC's obligation to supervise the Management Agent.  On January 1, 2007, V. Ray Rose, purporting to act on behalf of Canary Homes, entered into a Management Agreement for Residential Property ("Canary Homes Management Agreement"), which made Summit the management agent.  The Canary Homes Management Agreement obligates Summit to manage the property presently known as Canary

Homes.  The Canary Homes Management Agreement further provides that it may be terminated immediately by Canary Homes if Canary Homes, LLC ceases to be the General Partner of Canary Homes.

42.

Canary Homes, LLC and/or Summit, as its management agent, is obligated to maintain a complete and accurate set of books and supporting documentation related to Canary Homes at the principal office of Canary Homes.   Specifically, pursuant to Section 12.1(A)(i), Canary Homes, LLC is obligated to keep or cause to be kept:

> A complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Partnership's business.  The books and records of the Partnership (including all records required to be maintain under the Act) shall at all times be maintained at the principal office of the Partnership. Each of the Partners and their duly authorized representatives shall have the right to examine the books of the Partnership and all other records and information concerning the operation of the Property at reasonable times.

43.

In addition, and pursuant to Section 12.1(K), AMTAX Holdings 248, LLC is entitled to inspect and copy the records of Canary Homes.

44.

The "Certain Rights of Investor Limited Partner" are set forth in Article IV of the Canary Homes Partnership Agreement.  Under Article IV, Section 4.5(A)(iv)(2) of the Canary Homes Partnership Agreement, AMTAX Holdings 248, LLC has the right:

> to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the

discharge of its duties and obligations as General Partner, or upon the occurrence of any of the following:

(2)     the General Partners, or any of them, shall have violated any rights, powers, duties, representations or warranties as set forth in Article VII herein or shall have violated any material provision of this Agreement, defaulted on a guarantee here or the timely payment of a Penalty Payment or violated any material provision of applicable law.

45.

Under Article VIII, Section 8.4(E) of the Canary Homes Partnership Agreement, a General Partner is liable for, among other things, any loss or damage that the Partnership *or any of its partners* may incur as a result of the General Partner's removal.

46.

Through audits of Canary Homes, AMTAX Holdings 248, LLC discovered that Canary Homes, LLC violated the Canary Homes Partnership Agreement by making unapproved loans and/or advances of Canary Homes' funds.  Specifically, in 2011, Canary Homes, LLC advanced $42,161 to People's Community Subsidiary, Inc. ("People's"), another General Partner of Canary Homes, and Canary Homes for which they still owed Canary Homes $39,161 as of December 2013.

47.

The audits also revealed that Canary Homes, LLC violated the prohibition in Section 7.1(B)(i) of the Canary Homes Partnership Agreement by incurring indebtedness for money borrowed on the general credit of Canary Homes through the following transactions: (1) a 2008 advance by Robin Homes, LLC to Canary Homes, LP in the amount of $14,346; (2) a 2012 and 2010 advance by People's, another General Partner of Canary Homes, and Canary Homes, LLC to Canary Homes, LP of $59,012 and $6,910, respectively; (3) a 2010 payment of $10,000 for

operating costs made by Ames Gardens on behalf of Canary Homes; and (4) a 2011 advance of $20,000 by Ames Gardens to Canary Homes.

48.

Accordingly, on July 1, 2014, an authorized representative of AMTAX Holdings 248, LLC sent a Notice of Default (the "Canary Homes Notice") to the General Partners of Canary Homes citing Article IV, Section 4.5(A)(iv)(2).  The Canary Homes Notice further advised that, pursuant to Section 13.12, AMTAX Holdings 248, LLC had the right to remove the General Partners upon the expiration of thirty (30) days from the date of receipt of this notice, which is the period afforded to the partners for default of the Canary Homes Partnership Agreement to be cured.

49.

Canary Homes, LLC, through its counsel, has admitted that it breached the Canary Homes Partnership Agreement, received notice of its default, and did not cure those defaults within the requisite thirty-day period.  Due to these violations of the Canary Homes Partnership Agreement, AMTAX Holdings 248, LLC has the right to remove Canary Homes, LLC as the General Partner.  Further, as a consequence of this removal, Summit is terminated as the management agent.

50.

On November 18, 2014, an authorized representative of AMTAX Holdings 248, LLC arrived at the management office of Canary Homes to access and take possession of all Canary Homes' property, including the books, records, tax, financial, and accounts of Canary Homes in the possession and/or under the control of Canary Homes, LLC and Summit so that the new

17

General Partner could take over the management of the Canary Homes Project. However, Summit employees packaged and removed the Canary Homes' records and denied AMTAX Holdings 248, LLC access to them. Further, Mr. Peralta and/or Summit has refused to cede control of the Canary Homes' bank accounts.

51.

Pursuant to the Canary Homes Partnership Agreement, AMTAX Holdings 248, LLC has the right to require that Canary Homes, LLC and/or Summit afford it access to these books and records.

### C.    *Hnasko Homes*

52.

Hnasko Affordable Homes, ALPIC is governed by its Amended and Restated Articles of Partnership (the "Hnasko Homes Partnership Agreement"), dated effective July 31, 2001. Pursuant to the Hnasko Homes Partnership Agreement, the partners were as follows:

- Hnasko Holding Company, Inc. – General Partner and Owner of .008% of the partnership interest in Hnasko Homes

- Jefferson Housing Foundation – General Partner and Owner of .001%

- PROTECH 2001-B, LLC – Special Limited Partner and Owner of .001%

- AMTAX Holdings 2001-UU, LLC – Investor Limited Partner and Owner of 99.99%

53.

As it relates to capital contributions of the partners, AMTAX Holdings 2001-UU, LLC contributed $1,601,818 to the Hnasko Homes Partnership. Hnasko Holding Company, Inc. contributed $153.

54.

The Hnasko Homes Partnership Agreement was entered into for the purpose of acquiring, constructing, developing, repairing, improving, maintaining, operating, leasing, disposing of and otherwise dealing with the "Project."  The "Project" is defined in the Hnasko Homes Partnership Agreement as the "Land and Improvements," which are defined as certain parcels of land on which the Improvements known as Hnasko Homes are located.  The Hnasko Homes Project is hereinafter referred to as such.

55.

AMTAX Holdings 2001-UU, LLC, in its capacity as Investor Limited Partner, contributed certain, enumerated capital to the Hnasko Homes Project and is entitled to receive federal, affordable housing tax credits issued by the Louisiana Housing Finance Authority to Hnasko Homes.

56.

Under the Hnasko Homes Partnership Agreement, Hnasko Holding Company, Inc. assumed certain duties. In exchange, Hnasko Holding Company, Inc. received a specified ownership interest in Hnasko Homes and fees.

57.

The "Duties and Obligations of the General Partners" are set forth in Article VII, Section 7.4 of the Hnasko Homes Partnership Agreement and are incorporated herein as though set forth *in extenso*.  Additionally, Article VII, Section 7.1 of the Hnasko Homes Partnership Agreement places certain restriction on the authority of Hnasko Holding Company, Inc.

58.

Among those enumerated duties is Hnasko Holding Company, Inc.'s obligation to supervise the Management Agent.  On January 1, 2007, Hnasko Affordable Homes, LLC, purporting to act on behalf of Hnasko Homes, entered into a Management Agreement for Residential Property ("Hnasko Homes Management Agreement"), which made Summit the management agent.  The Hnasko Homes Management Agreement obligates Summit to manage the property presently known as Hnasko Homes.  The Hnasko Homes Management Agreement further provides that it may be terminated immediately by Hnasko Homes if Hnasko Holding Company, Inc. ceases to be the General Partner of Hnasko Homes.

59.

Hnasko Holding Company, Inc. and/or Summit, as its management agent, is obligated to maintain a complete and accurate set of books and supporting documentation related to Hnasko Homes at the principal office of Hnasko Homes.  Specifically, pursuant to Section 12.1(A)(i), Hnasko Holding Company, Inc. is obligated to keep or cause to be kept:

> A complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Partnership's business.  The books and records of the Partnership (including all records required to be maintain under the Act) shall at all times be maintained at the principal office of the Partnership. Each of the Partners and their duly authorized representatives shall have the right to examine the books of the Partnership and all other records and information concerning the operation of the Property at reasonable times.

60.

In addition, and pursuant to Section 12.1(K), AMTAX Holdings 2001-UU, LLC is entitled to access the records of Hnasko Homes and inspect and copy those records.

61.

The "Certain Rights of Investor Limited Partner" are set forth in Article IV of the Hnasko

Homes Partnership Agreement.   Under Article IV, Section 4.5(A)(iv)(2) of the Hnasko Homes

Partnership Agreement, AMTAX Holdings 2001-UU, LLC has the right:

> to remove any or all of the General Partners and elect one or more
> new General Partners in the event of any misconduct or failure to
> exercise reasonable care with respect to any material matter in the
> discharge of its duties and obligations as General Partner, or upon
> the occurrence of any of the following:

> (2)      the General Partners, or any of them, shall have violated
> any rights, powers, duties, representations or warranties as set forth
> in Article VII herein or shall have violated any material provision
> of this Agreement, defaulted on a guarantee here or the timely
> payment of a Penalty Payment or violated any material provision
> of applicable law.

62.

Under  Article  VIII,  Section  8.4(E)  of  the  Hnasko  Homes  Partnership  Agreement,  a

General Partner is liable for, among other things, any loss or damage that the Partnership *or any*

*of its partners* may incur as a result of the General Partner's removal.

63.

Through audits of Hnasko Homes, AMTAX Holdings 2001-UU, LLC discovered that

Hnasko Holding Company, Inc. violated the Hnakso Homes Partnership Agreement by making

unapproved loans and/or advances of Hnasko Homes' funds.   Specifically, Hnasko Holding

Company, Inc. violated Section 7.4(F) by: (1) advancing $11,718 of Hnasko Homes' funds to St.

Louis Pointe (another entity run by Mr. Rose) in 2012; (2) advancing $122,045 of Hnakso

Homes' funds to St. Louis Pointe in 2012; (3) advancing $1,524 of Hnasko Homes' funds to

Jefferson Housing, another General Partner, in 2013; and (4) advancing $1,296 of Hnasko Homes' funds to Jefferson Housing in 2012.

64.

The audits also revealed that Hnasko Holding Company, Inc. violated the prohibition in Section 7.1(B)(i) of the Hnasko Homes Partnership Agreement by incurring indebtedness for money borrowed on the general credit of Hnasko Homes by accepting an advance of $7,045 from the General Partners of Hnasko Homes for operating costs.

65.

Finally, Hnasko Holding Company, Inc. failed to arrange for payment of Asset Management Fees owed to AMTAX Holdings 2001-UU, LLC in the amounts of $12,475 and $12,291 in 2013 and 2012, respectively.

66.

Accordingly, on July 1, 2014, an authorized representative of AMTAX Holdings 2001-UU, LLC sent a Notice of Default (the "Hnasko Homes Notice") to the General Partners of Hnasko Homes citing Article IV, Section 4.5(A)(iv)(2).  The Hnasko Homes Notice further advised that, pursuant to Section 13.12, AMTAX Holdings 2001-UU, LLC had the right to remove the General Partners upon the expiration of thirty (30) days from the date of receipt of this notice, which is the period afforded to the partners for default of the Hnasko Homes Partnership Agreement to be cured.

67.

Hnasko Holding Company, Inc., through its counsel, has admitted that it breached the Hnasko Homes Partnership Agreement, and did not cure those defaults within the requisite

thirty-day period.   Due to these violations of the Hnasko Homes Partnership Agreement, AMTAX Holdings 2001-UU, LLC has the right to remove Hnasko Holding Company, Inc. as the General Partner.   Further, as a consequence of this removal, Summit is terminated as the management agent.

68.

On November 18, 2014, an authorized representative of AMTAX Holdings 2001-UU, LLC arrived at the management office of Hnasko Homes to access and take possession of all Hnasko Homes' property, including the books, records, tax, financial, and accounts of Hnasko Homes in the possession and/or under the control of Hnasko Holding Company, Inc. and Summit so that the new General Partner could take over the management of the Ames Gardens Project. However, Summit employees packaged and removed the Hnasko Homes' records and denied AMTAX Holdings 2001-UU, LLC access to them.   Further, Mr. Peralta and/or Summit has refused to cede control of the Hnasko Homes' bank accounts.

69.

Pursuant to the Hnsko Homes Partnership Agreement, AMTAX Holdings 2001-UU, LLC has the right to require that Hnasko Holding Company, Inc. and/or Summit afford it access to these books and records.

**D.**     ***Robin Homes***

70.

Robin Homes, LP is governed by its Second Amended and Restated Articles of Partnership (the "Robin Homes Partnership Agreement"), dated effective July 1, 2003.  Pursuant to the Robin Homes Partnership Agreement, the partners were as follows:

23

- Robin Homes, LLC – General Partner and Owner of .008% of the partnership interest in Robin Homes

- People's Community Subsidiary – General Partner and Owner of .001%

- PROTECH 2003-B, LLC – Special Limited Partner and Owner of .001%

- AMTAX Holdings 249, LLC – Investor Limited Partner and Owner of 99.99%

71.

As it relates to capital contributions of the partners, AMTAX Holdings 249, LLC contributed $1,863,201 to the Robin Homes Partnership.  Robin Homes, LLC contributed $150.

72.

The Robin Homes Partnership Agreement was entered into for the purpose of acquiring, constructing, developing, repairing, improving, maintaining, operating, leasing, disposing of and otherwise dealing with the "Project."  The "Project" is defined in the Robin Homes Partnership Agreement as the "Land and Improvements," which are defined as certain parcels of land on which the Improvements known as Robin Homes are located.  The Robin Homes Project is hereinafter referred to as such.

73.

AMTAX Holdings 249, LLC, in its capacity as Investor Limited Partner, contributed certain, enumerated capital to the Robin Homes Project and is entitled to receive federal, affordable housing tax credits issued by the Louisiana Housing Finance Authority to Robin Homes.

74.

Under the Robin Homes Partnership Agreement, Robin Homes, LLC assumed certain duties.   In exchange, Robin Homes, LLC received a specified ownership interest in Robin Homes and fees.

75.

The "Duties and Obligations of the General Partners" are set forth in Article VII, Section 7.4 of the Robin Homes Partnership Agreement and are incorporated herein as though set forth *in extenso*.   Additionally, Article VII, Section 7.1 of the Robin Homes Partnership Agreement places certain restriction on the authority of Robin Homes, LLC.

76.

Among those enumerated duties is Robin Homes, LLC's obligation to supervise the Management Agent.   On January 1, 2007, Robin Homes, LLC, on behalf of Robin Homes, entered into a Management Agreement for Residential Property ("Robin Homes Management Agreement"), which made Summit the management agent.   The Robin Homes Management Agreement obligates Summit to manage the property presently known as Robin Homes.   The Robin Homes Management Agreement further provides that it may be terminated immediately by Robin Homes if Robin Homes, LLC ceases to be the General Partner of Robin Homes.

77.

Robin Homes, LLC and/or Summit, as its management agent, is obligated to maintain a complete and accurate set of books and supporting documentation related to Robin Homes at the principal office of Robin Homes.   Specifically, pursuant to Section 12.1(A)(i), Robin Homes, LLC is obligated to keep or cause to be kept:

A complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Partnership's business.  The books and records of the Partnership (including all records required to be maintain under the Act) shall at all times be maintained at the principal office of the Partnership. Each of the Partners and their duly authorized representatives shall have the right to examine the books of the Partnership and all other records and information concerning the operation of the Property at reasonable times.

78.

In addition, and pursuant to Section 12.1(K), AMTAX Holdings 249, LLC is entitled to access the records of Robin Homes and inspect and copy those records.

79.

The "Certain Rights of Investor Limited Partner" are set forth in Article IV of the Robin Homes Partnership Agreement.  Under Article IV, Section 4.5(A)(iv)(2) of the Robin Homes Partnership Agreement, AMTAX Holdings 249, LLC has the right:

to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner, or upon the occurrence of any of the following:

(2)     the General Partners, or any of them, shall have violated any rights, powers, duties, representations or warranties as set forth in Article VII herein or shall have violated any material provision of this Agreement, defaulted on a guarantee here or the timely payment of a Penalty Payment or violated any material provision of applicable law.

80.

Under Article VIII, Section 8.4(E) of the Robin Homes Partnership Agreement, a General Partner is liable for, among other things, any loss or damage that the Partnership *or any of its partners* may incur as a result of the General Partner's removal.

26

81.

Through audits of Robin Homes, AMTAX Holdings 249, LLC discovered that Robin Homes, LLC violated the Robin Homes Partnership Agreement by making unapproved loans and/or advances of Robin Homes' funds.  Specifically, Robin Homes, LLC violated Section 7.4(F) by: (1) advancing $20,000 of Robin Homes' funds to Ames Gardens in 2011; and (2) advancing $35,204 of Robin Homes' funds to Canary Homes in 2004.

82.

The audits also revealed that Robin Homes, LLC violated the prohibition in Section 7.1(B)(i) of the Robin Homes Partnership Agreement by incurring indebtedness for money borrowed on the general credit of Robin Homes by: (1) accepting an advance of $110,500 from Canary Homes to Robin Homes in 2007; and (2) accepting an advance of $115,996 from St. Louis Pointe, LLC to Robin Homes.

83.

Finally, Robin Homes, LLC failed to arrange for payment of Asset Management Fees owed to AMTAX Holdings 249, LLC in the amounts of $31,516 and $30,862 in 2013 and 2012, respectively.

84.

Accordingly, on July 1, 2014, an authorized representative of AMTAX Holdings 249, LLC sent a Notice of Default (the "Robin Homes Notice") to the General Partners of Robin Homes citing Article IV, Section 4.5(A)(iv)(2).  The Robin Homes Notice further advised that, pursuant to Section 13.12, AMTAX Holdings 249, LLC had the right to remove the General Partners upon the expiration of thirty (30) days from the date of receipt of this notice, which is

the period afforded to the partners for default of the Robin Homes Partnership Agreement to be cured.

85.

Robin Homes, LLC, through its counsel, has admitted that it breached the Robin Homes Partnership Agreement, that it received notice of default, and did not cure those defaults within the requisite thirty-day period.   Due to these violations of the Robin Homes Partnership Agreement, AMTAX Holdings 249, LLC has the right to remove Robin Homes, LLC as the General Partner.   Further, as a consequence of this removal, Summit is terminated as the management agent.

86.

On November 18, 2014, an authorized representative of AMTAX Holdings 249, LLC arrived at the management office of Robin Homes to access and take possession of all Robin Homes' property, including the books, records, tax, financial, and accounts of Robin Homes in the possession and/or under the control of Robin Homes, LLC and Summit so that the new General Partner could take over the management of the Robin Homes Project.   However, Summit employees packaged and removed the Robin Homes' records and denied AMTAX Holdings 249, LLC access to them.   Further, Mr. Peralta and/or Summit has refused to cede control of the Robin Homes' bank accounts.

87.

Pursuant to the Robin Homes Partnership Agreement, AMTAX Holdings 249, LLC has the right to require that Robin Homes, LLC and/or Summit afford it access to these books and records.

28

### E.   *Smith Square*

88.

Smith Square Development Limited Partnership is governed by its Second Amended and Restated Articles of Partnership (the "Smith Square Partnership Agreement"), dated effective May 9, 2003, as amended by Amendment 1 to Second Amended and Restated Agreement of Limited Partnership.  Pursuant to the Smith Square Partnership Agreement, the partners were as follows:

- Smith Square, LLC – General Partner and Owner of .008% of the partnership interest in Smith Square

- Mirabeau Family Learning Center, Inc. – General Partner

- PROTECH 2003-A, LLC – Special Limited Partner

- AMTAX Holdings 250, LLC – Investor Limited Partner and Owner of 99.99% of the partnership interest in Smith Square

89.

As it relates to capital contributions of the partners, AMTAX Holdings 250, LLC contributed $1,746,531 to the Smith Square Partnership.  Smith Square, LLC contributed $160.

90.

The Smith Square Partnership Agreement was entered into for the purpose of acquiring, constructing, developing, repairing, improving, maintaining, operating, leasing, disposing of and otherwise dealing with the "Project."  The "Project" is defined in the Smith Square Partnership Agreement as the "Land and Improvements," which are defined as certain parcels of land on which the Improvements known as Smith Square are located.  The Smith Square Project is hereinafter referred to as such.

91.

AMTAX Holdings 250, LLC, in its capacity as Investor Limited Partner, contributed certain, enumerated capital to the Smith Square Project and is entitled to receive federal, affordable housing tax credits issued by the Louisiana Housing Finance Authority to Smith Square.

92.

Under the Smith Square Partnership Agreement, Smith Square, LLC assumed certain duties.  In exchange, Smith Square, LLC received a specified ownership interest in Smith Square and fees.

93.

The "Duties and Obligations of the General Partners" are set forth in Article VII, Section 7.4 of the Smith Square Partnership Agreement and are incorporated herein as though set forth *in extenso*.  Additionally, Article VII, Section 7.1 of the Smith Square Partnership Agreement places certain restriction on the authority of Smith Square, LLC.

94.

Among those enumerated duties is Smith Square, LLC's obligation to supervise the Management Agent.  On January 1, 2007, Smith Square, LLC, on behalf of Smith Square, entered into a Management Agreement for Residential Property ("Smith Square Management Agreement"), which made Summit the management agent.  The Smith Square Management Agreement obligates Summit to manage the property presently known as Smith Square.  The Smith Square Management Agreement further provides that it may be terminated immediately by Smith Square if Smith Square, LLC ceases to be the General Partner of Smith Square.

95.

Smith Square, LLC and/or Summit, as its management agent, is obligated to maintain a complete and accurate set of books and supporting documentation related to Smith Square at the principal office of Smith Square.  Specifically, pursuant to Section 12.1(A)(i), Smith Square, LLC is obligated to keep or cause to be kept:

> A complete and accurate set of books and supporting documentation of transactions with respect to the conduct of the Partnership's business.  The books and records of the Partnership (including all records required to be maintain under the Act) shall at all times be maintained at the principal office of the Partnership. Each of the Partners and their duly authorized representatives shall have the right to examine the books of the Partnership and all other records and information concerning the operation of the Property at reasonable times.

96.

In addition, and pursuant to Section 12.1(K), AMTAX Holdings 250, LLC is entitled to inspect and copy those records.

97.

The "Certain Rights of Investor Limited Partner" are set forth in Article IV of the Smith Square Partnership Agreement.  Under Article IV, Section 4.5(A)(iv)(2) of the Smith Square Partnership Agreement, AMTAX Holdings 250, LLC has the right:

> to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner, or upon the occurrence of any of the following:
>
> (2)      the General Partners, or any of them, shall have violated any rights, powers, duties, representations or warranties as set forth in Article VII herein or shall have violated any material provision of this Agreement, defaulted on a guarantee here or the timely

payment of a Penalty Payment or violated any material provision of applicable law.

98.

Under Article VIII, Section 8.4(E) of the Smith Square Partnership Agreement, a General Partner is liable for, among other things, any loss or damage that the Partnership *or any of its partners* may incur as a result of the General Partner's removal.

99.

Through audits of Smith Square, AMTAX Holdings 250, LLC discovered that Smith Square, LLC violated the Smith Square Partnership Agreement by making unapproved loans and/or advances of Smith Square funds.   Specifically, Smith Square, LLC violated the prohibition in Section 7.1(B)(i) of the Smith Square Partnership Agreement by incurring indebtedness for money borrowed on the general credit of Smith Square by accepting loans from V. Ray Rose in the amounts of $6,219 (in 2013), $21,082 (in 2012), $19,899 (in 2011), and $10,510 (in 2010) for operating costs.

100.

Finally, Smith Square, LLC failed to arrange for payment of Asset Management Fees owed to AMTAX Holdings 250, LLC in the amounts of $54,829 and $46,148 in 2013 and 2012, respectively.

101.

Accordingly, on July 1, 2014, an authorized representative of AMTAX Holdings 250, LLC sent a Notice of Default (the "Smith Square Notice") to the General Partners of Smith Square citing Article IV, Section 4.5(A)(iv)(2).  The Smith Square Notice further advised that, pursuant to Section 13.12, AMTAX Holdings 250, LLC had the right to remove the General

Partners upon the expiration of thirty (30) days from the date of receipt of this notice, which is the period afforded to the partners for default of the Smith Square Partnership Agreement to be cured.

102.

Smith Square, LLC, through its counsel, has admitted that it breached the Smith Square Partnership Agreement, that it received notice of default, and did not cure those defaults within the requisite thirty-day period.   Due to these violations of the Smith Square Partnership Agreement, AMTAX Holdings 250, LLC has the right to remove Smith Square, LLC as the General Partner.   Further, as a consequence of this removal, Summit is terminated as the management agent.

103.

On November 18, 2014, an authorized representative of AMTAX Holdings 250, LLC arrived at the principal office of Smith Square to access and take possession of all Smith Square property, including the books, records, tax, financial, and accounts of Smith Square in the possession and/or under the control of Smith Square, LLC and Summit so that the new General Partner could take over management of the Smith Square Project.  However, Summit employees packaged and removed the Smith Square records and denied AMTAX Holdings 250, LLC access to them.  Further, Mr. Peralta and/or Summit has refused to cede control of the Smith Square bank account.

104.

Pursuant to the Smith Square Partnership Agreement, AMTAX Holdings 250, LLC has the right to require that Smith Square, LLC and/or Summit afford it access to these books and records.

For the specific counts, the individual AMTAX Entities will hereafter globally refer to themselves, the Investor Limited Partners, as the "AMTAX Entities," the General Partners as the "Rose Entities," the five limited partnerships as the "Partnerships," the partnership agreements for the five limited partnerships as the "Partnership Agreements," and the management agreements for the five limited partnerships as the "Management Agreements."

### F.      *Subsequent Defaults*

105.

Following the original Notices of Default, the AMTAX Entities have learned of additional defaults by some or all of the Rose Entities, including, but not limited to: commingling of insurance risks in violation of the Partnership Agreements, commingling of partnership assets into bank accounts controlled by entities other than the General Partners, liens against Partnership properties, payment of non-partnership debts with partnership assets, and transfers of money between and among the Partnerships.

106.

In addition, the removal of Partnership books and records that occurred on November 18, 2014, at the direction of Mr. Rose and Mr. Peralta or their agents, are additional grounds for default under the Partnership Agreements.

107.

Any one of these instances of default is sufficient under the Partnership Agreements to trigger immediate default and removal as General Partner under the Partnership Agreements.

108.

There are other General Partners of the Partnerships who received the Notices of Default and indicated that they had no objection to their removal.  Accordingly, the AMTAX Entities have only added as parties those General Partners who are contesting removal.

**IV.   BREACH OF PARTNERSHIP AGREEMENTS BY THE ROSE ENTITIES**

109.

The AMTAX Entities re-allege, reaver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1-108 of the Complaint as if repeated herein.

110.

The Rose Entities, through their actions and omissions, have breached their obligations as General Partners under the Partnership Agreements.

111.

The Rose Entities, have breached the Partnership Agreements by, among other things, commingling Partnership funds, mismanaging Partnership funds, making unauthorized advances of Partnership funds, incurring indebtedness for money borrowed on the general credit of the Partnerships, removing Partnership files and records, failing to pay Asset Management Fees, and breaching regulatory requirements.

112.

Further, the Rose Entities have breached the Partnership Agreements by permitting their management agents, Mr. Peralta and/or Summit, to deny access to the books and records of the Partnerships to the AMTAX Entities.

113.

Under the Partnership Agreements, the AMTAX Entities are entitled to remove the Rose Entities as General Partner of the Partnerships, and, pursuant to the removal provisions of the Partnership Agreements, the Rose Entities, Mr. Peralta, and Summit are required to cooperate in the orderly transfer of records and management to the new General Partners.

114.

As a direct and proximate result of the Rose Entities' failure to turn over the property, books, records, tax, and financial information of the Partnerships as required by the removal provisions of the Partnership Agreements, the AMTAX Entities have not only incurred enforcement damages to recover the property of the Partnerships, they are unable to complete their audits, certifications, and tax returns.  Without these documents, the AMTAX Entities could be prevented from claiming over $400,000 in tax credits.

115.

In addition, if the Partnerships' bank accounts are depleted, the AMTAX Entities will be damaged through diverted Asset Management Fees, and will be required to replace those funds to ensure that the Partnerships do not default on any of their obligations.

116.

Finally, the AMTAX Entities are entitled to recover all damages to which they are entitled under the law for the breaches of the Partnership Agreements, including damages foreseeable and unforeseeable.

## V.    BREACH OF FIDUCIARY DUTY BY THE ROSE ENTITIES

117.

The AMTAX Entities re-allege, reaver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1-116 of the Complaint as if repeated herein.

118.

The Rose Entities owed the AMTAX Entities a duty of loyalty pursuant to the Partnership Agreements.

119.

The Rose Entities breached their fiduciary duties to the AMTAX Entities when they, or their agents, Mr. Peralta and Summit, commingled the funds of the Partnerships, and made and accepted various advances on behalf of the Partnerships to other entities managed by Mr. Rose. These actions constituted self-dealing and were undertaken for the sole benefit of Mr. Rose or the Rose Entities, and harmed the AMTAX Entities.

120.

The Rose Entities also breached their duties of disclosure to the AMTAX Entities by failing to properly maintain the books and records of the Partnerships. The Rose Entities' duty is analogous to that of a trustee, and, they breached that duty by failing to disclose the advancement and commingling of funds between the Partnerships and other entities controlled by Mr. Rose.

Such breaches were compounded by the refusal of the Rose Entities to permit the AMTAX Entities access to the books and records of the Partnerships on November 18, 2014, and accusing the AMTAX Entities – the 99.99% owners of the interests of the Partnerships – of trespassing when they appeared at the Partnerships' offices and requested access to those records.

121.

Further, by packaging and removing the property of the Partnerships, including tenant files, the Rose Entities are subjecting the Partnerships – and the AMTAX Entities – to liability from third-parties.

122.

Finally, by refusing to cede control of the Partnership funds to the new General Partners, the Rose Entities are forcing the AMTAX Entities to contribute funds to the Partnerships, to ensure their continued operations and uninterrupted service to the tenants of the apartment complexes owned by the Partnerships, which constitutes a breach of the duty of loyalty to the AMTAX Entities.

123.

All of the Rose Entities' breach of their fiduciary duties, as set forth above, caused the AMTAX Entities to suffer damages.

124.

The Rose Entities are liable to the AMTAX Entities for the damages suffered by the AMTAX Entities as a result of the Rose Entities' breach of their fiduciary duties.

### VI.   DECLARATORY RELIEF AGAINST THE DEFENDANTS

125.

The AMTAX Entities re-allege, reaver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1-124 of the Complaint as if repeated herein.

126.

The Rose Entities were in breach of the Partnership Agreements based on the enumerated violations and failure to timely cure.   Under the Partnership Agreements, a violation of the Partnership Agreements permits the AMTAX Entities to remove all of the General Partners.

127.

Based on the aforementioned terms of the Partnership Agreements, the Rose Entities' violations of the Partnership Agreements, the facts as alleged, and pursuant to 28 U.S.C. § 2201, the AMTAX Entities are entitled to a declaration that the Rose Entities were properly removed as General Partners of the Partnerships, that Mr. Crescionie and Mr. Loraso were properly removed as the General Partners of Ames Gardens, that the Defendants improperly removed and/or possess the property of the Partnerships, that the Defendants may not destroy, alienate, damage, or modify the property of the Partnerships; and that the General Partner designated by the AMTAX Entities is the only proper representative of the Partnerships.

### VII.   CONVERSION BY THE ROSE ENTITIES, SUMMIT, AND MR. PERALTA

128.

The AMTAX Entities re-allege, reaver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1-127 of the Complaint as if repeated herein.

129.

The Rose Entities were in breach of the Partnership Agreements based on the enumerated violations and failure to timely cure.

130.

The removal of the Partnership property by the Rose Entities, Summit, and Mr. Peralta is in derogation of the Partnership Agreements, was a wrongful exercise or assumption of authority over that property, and, as such, constituted conversion.

131.

As a result of the conduct of these parties, the AMTAX Entities are entitled to the damages that they have incurred to restore the property of the Partnerships.

### VIII.   TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST MR. ROSE AND MR. PERALTA

132.

The AMTAX Entities re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 131 of the Complaint as if fully set forth herein.

133.

Mr. Rose and Mr. Peralta are both persons of the full age of majority and citizens of Louisiana.

134.

Mr. Rose at all pertinent times was the manager or officer of the Rose Entities and Mr. Peralta was the President of Summit.  Both are fiduciaries to the Rose Entities and Summit.

135.

At all times pertinent to this suit, there were legally protected interests that existed between the AMTAX Entities and the Rose Entities, namely the Partnership Agreements.

136.

Messrs. Rose and Peralta are and were aware of legally protected interests between the AMTAX Entities and the Rose Entities.

137.

Messrs. Rose and Peralta intentionally caused or induced the Rose Entities and Summit to breach the Partnership Agreements through intentionally misappropriation of Partnership assets, the conversion of Partnership property, the dealings with the AMTAX Entities, the removal of Partnership property from the offices of the Partnerships, and the refusal to cede control of the accounts of the Partnerships to permit the continued operations of the Partnerships.

138.

By authorizing the actions referenced in Paragraph 137, Messrs. Rose and Peralta have caused the Rose Entities to breach the Partnership Agreements, and to breach other obligations owed at law by the Rose Entities and Summit to the AMTAX Entities.

139.

There is no justification for the conduct of Mr. Rose and Mr. Peralta.

140.

The conduct of Mr. Rose and Mr. Peralta have caused damages to the AMTAX Entities by breach of the Partnership Agreements.

141.

Such conduct constitutes tortious interference with contractual relations under Louisiana law.

142.

The AMTAX Entities has been damaged as a result of such tortious interference, and Messrs. Rose and Peralta are liable jointly, severally and *in solido* for all such damages.

### IX.   ENFORCEMENT OF PERSONAL GUARANTIES AGAINST MR. ROSE

143.

The AMTAX Entities re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 142 of the Complaint as if fully set forth herein.

144.

Mr. Rose is a person of the full age of majority and a citizen of Louisiana.

145.

Mr. Rose is a personal guarantor of the obligations of the Rose Entities pursuant to separate, stand-alone Guaranty Agreements executed by him.

146.

Under the Guaranty Agreements, the AMTAX Entities are entitled to recover from Mr. Rose amounts owed from the Rose Entities.

147.

Therefore, the AMTAX Entities seek to enforce those Guaranty Agreements and recover such amounts owed from Mr. Rose to which they are entitled under the Guaranty Agreements.

**X.** **PERMANENT INJUNCTIVE RELIEF AGAINST THE DEFENDANTS**

148.

The AMTAX Entities re-allege, reaver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1-147 of the Complaint as if fully set forth herein.

149.

The principals, employees, or agents of the Defendants have taken the property, including the tenant files of the Partnerships. These files contain sensitive financial information of third-parties. Not only are these records of the Partnerships to which the AMTAX Entities are entitled to access under the Partnership Agreements, they are required for the AMTAX Entities to complete the necessary paperwork to claim tax credits.

150.

In addition, Mr. Peralta has structured the bank accounts of the Partnerships in a manner that affords him complete control over the funds of the Partnerships. Given the termination of the management agreements, and prior, improper practices with respect to the Partnership funds, neither Mr. Peralta nor Summit should have any access to those funds and those funds should be transferred to the General Partner designated by the AMTAX Entities.

151.

Based on the aforementioned terms of the Partnership Agreements, the Rose Entities' violations of the Partnership Agreements, the facts as alleged, the AMTAX Entities are entitled to a permanent injunction requiring the Defendants to turn over the Partnerships' property, including tenant records, confidential information, bank accounts, monies, materials, supplies, equipment, and other items.

### XI.   CONTEMPORANEOUS FILING OF MOTION FOR INJUNCTIVE RELIEF

152.

Further to the claims asserted herein, the AMTAX Entities are simultaneously filing an *ex parte* motion for a temporary retaining order that gives effect to the plain language of the Partnership Agreements, *inter alia*, precluding the Defendants from: (1) alienating, damaging, altering, modifying, moving, or taking any other action with respect to Partnership Property; (2) distributing money from any bank account that contains Partnership Funds absent Order of this Court or written consent from the AMTAX Entities; (3) destroying, erasing, or otherwise making unavailable for further legal proceedings, any records or documents (including computer readable media) in Defendants' possession or control which in any way relate to any business dealing with AMTAX Entities; and (4) holding themselves out as representatives of the Partnerships or taking action on behalf of any of the Partnerships.  This motion also requests preliminary injunctive relief to that same effect.

### Prayer for Relief

**WHEREFORE**, the AMTAX Entities pray that, after due proceedings are had, judgment be rendered in favor of the AMTAX Entities and against Defendants for all damages suffered, all of the aforementioned relief, and any other relief to which they are entitled, including:

1.   Injunctive relief requiring the Defendants to turn over the Partnerships' property, including tenant records, confidential information, bank accounts, monies, materials, supplies, equipment, and other items to the General Partner designated by the AMTAX Entities;

2.   A Declaratory Judgment that the Rose Entities, Victor R. Loraso, Jr., and Rene C. Crescionie, Sr. were properly removed under the partnership agreements;

3.      A Declaratory Judgment that the AMTAX Entities have the right to remove the General Partners of the Partnership Agreements;

4.      A Declaratory Judgment that the General Partner designated by the AMTAX Entities is the only proper representative of the Partnerships;

5.      A permanent injunction enjoining Defendants from destroying or otherwise disposing of the Partnerships' property.

6.      An Order restraining Defendants from preventing the AMTAX Entities or the General Partner designated by the AMTAX Entities from taking possession of the Partnerships' property.

7.      Damages against the Rose Entities for breaches of the Partnership Agreements and breaches of fiduciary duty;

8.      Damages against Mr. Rose for tortious interference with contract, conversion, and for amounts owed pursuant to his personal guaranties.

9.      Damages against Mr. Peralta for tortious interference with contract and conversion.

10.     Any and all other direct and consequential damages caused as a direct and proximate result of Defendants' breaches of the Partnership Agreements.

11.     Any and all other monetary, legal, or equitable relief to which the AMTAX Entities may be entitled.

Respectfully submitted,

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**


By:          *s/Steven F. Griffith, Jr.*
             STEVEN F. GRIFFITH, JR., T.A. (27232)
             ERIN E. PELLETERI (30666)
             MATTHEW C. JUNEAU (33210)
             201 St. Charles Avenue, Suite 3600
             New Orleans, Louisiana   70170
             Telephone:  (504) 566-5200
             Facsimile:  (504) 636-4000

**ATTORNEYS FOR ALL PLAINTIFFS,**
**AMTAX HOLDINGS 2001-VV, LLC,**
**AMTAX HOLDINGS 248, LLC,**
**AMTAX HOLDINGS 2001-UU, LLC,**
**AMTAX HOLDINGS 249, LLC, AND**
**AMTAX HOLDINGS 250, LLC**